```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT BECKLEY
```

UNITED STATES OF AMERICA

v.                          CRIMINAL ACTION NO. 5:18-cr-00027-001

COREY D. LARKIN

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's motion for compassionate release. (ECF No. 35.) Defendant requests compassionate release in light of the COVID-19 pandemic. The government filed a response in opposition. (ECF No. 37.) For the following reasons, the court **DENIES** defendant's motion for compassionate release.

### I. Background

Defendant is 40 years old. He claims that he suffers from hypertension, (see ECF No. 35), but has not attached medical records to his motion.

On March 13, 2018, defendant pled guilty to conspiracy to distribute and possession with intent to distribute 500 grams or more of cocaine and 100 grams or more of heroin, in violation of 21 U.S.C. § 846. (See ECF Nos. 1, 6.) On July 11, 2018, this court sentenced defendant to 188 months of incarceration. (ECF No. 16.) As of August 12, 2020, defendant has served only 38 months - approximately 20% of his sentence. (See ECF No. 37.)

Defendant is currently incarcerated at FCI Elkton in Lisbon, Ohio. FCI Elkton has been the scene of one of the largest COVID-19 outbreaks in federal prisons, as 981 inmates at FCI Elkton have tested positive for COVID-19 and 9 inmates have died from COVID-19. See *COVID-19 Cases*, Federal Bureau of Prisons (updated August 11, 2020), https://www.bop.gov/coronavirus/. The Bureau of Prisons ("BOP") website currently lists FCI Elkton as having ten current COVID-19 cases – eight cases among inmates and two among staff. See id.

On May 20, 2020, defendant petitioned the Warden at FCI Elkton for compassionate release due to COVID-19. (See ECF No. 35.) The Warden has not responded to defendant's request. (ECF No. 37.)

**II. Analysis**

The First Step Act empowers criminal defendants to request that courts grant them compassionate release pursuant to 18 U.S.C § 3582(c). But before they make such requests to the court, defendants must first ask the BOP via the administrative process and give the BOP thirty days to respond. See id. § 3582(c)(1)(A). Upon such a motion from the BOP or from a defendant (after either the BOP denies the request or thirty days has elapsed since the request was filed), a court "may reduce the term of imprisonment." Id. § 3582(c)(1)(A)(i).

2

Here, more than thirty days have elapsed since defendant filed his request for compassionate release with the BOP.  Thus, defendant has clearly exhausted his remedies and may permissibly bring his request for compassionate release before the court.  This court will now consider whether defendant has demonstrated that he meets the factors meriting compassionate release.

Congress has restricted the power of courts to modify a term of imprisonment once it has been imposed except when "extraordinary and compelling reasons warrant such a reduction" and when "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Thus, to warrant compassionate release, defendant must show that:  (1) extraordinary and compelling reasons warrant a sentence reduction; (2) he is not a danger to the safety of others or the community; and (3) the reduction satisfies the sentencing factors in 18 U.S.C. § 3553(a).  See id.; see also USSG §§1B1.13(1)(A),(2).  All three factors must be present.

### A. Extraordinary and Compelling Reasons

Other district courts, in considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in

the prison facility.  United States v. Brady, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (citing and gathering cases).  Thus, compassionate release motions amid the COVID-19 pandemic require a "fact-intensive" inquiry.  See United States v. Shakur, 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020).

Defendant is 40 years old, and thus his age does not place him at risk for serious complications from COVID-19.  Defendant states, however, that he suffers from hypertension.  Hypertension falls on the second tier of CDC warnings about underlying medical conditions that create increased risk for severe illness from COVID-19:  according to the CDC, persons of any age with hypertension "might be at an increased risk for severe illness from COVID-19."  See *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, Ctrs. For Disease Control & Prevention (updated July 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The court has not been provided any supporting medical records as to defendant's condition.  The court therefore cannot fully evaluate the seriousness of defendant's hypertension and its impact on the particularized danger COVID-19 poses to defendant.  However, the court will at this point assume without finding that defendant – due to his hypertension – may be at a higher risk of health problems resulting from COVID-19.

4

Furthermore, FCI Elkton has been a hotspot for COVID-19 cases: 981 inmates at FCI Elkton have tested positive for COVID-19 and 9 inmates have died from COVID-19. See *COVID-19 Cases*, Federal Bureau of Prisons (updated August 11, 2020), https://www.bop.gov/coronavirus/; see also United States v. Ali-Cauthen, 2020 WL 4470639, at *1 (D. Md. Aug. 4, 2020) ("FCI-Elkton has been one of the BOP facilities hardest hit by COVID-19"); The government here admits that "FCI Elkton has had a large number of confirmed positive COVID-19 cases among inmates." (ECF No. 679.) Although the number of COVID-19 cases at FCI Elkton have fortunately diminished considerably – currently eight inmates and two staff members are positive according to the BOP – defendant can still show a particularized risk of contracting COVID-19 due to his incarceration at FCI Elkton. United States v. Kibble, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (Faber, J.) ("defendant can show a particularized risk of contracting the disease [at] FCI Elkton"). Assuming the medical validity of defendant's claimed conditions, defendant has a particularized risk of contracting COVID-19, and the court therefore assumes without finding that there are "extraordinary and compelling reasons" present, within the meaning of 18 U.S.C. § 3582(c)(1)(A), to support a reduced sentence or early release.

### B. Safety to the Community

Although the court at this point assumes that there are "extraordinary and compelling reasons" present, defendant cannot demonstrate that he is not a danger to the safety of the community. Defendant is currently serving a sentence for participating in a drug trafficking network that was distributing heroin and cocaine in and around Raleigh County, West Virginia. Defendant distributed approximately one kilogram of cocaine within the Southern District of West Virginia, and he also received approximately 133 grams of heroin that he intended to distribute but the drugs were recovered by police during a traffic stop prior to distribution. When officers conducted a search of defendant's residence, officers found approximately 41 grams of cocaine, approximately $8,295 in drug proceeds, and a 12-ton shop press used to package narcotics.

Furthermore, the instant conviction was defendant's third felony drug offense, which qualified defendant for career offender status. Defendant also previously served state sentences in Raleigh County for felony drug offenses. Additionally, defendant committed one of the underlying state offenses while on parole for a prior drug conviction. Defendant previously had his parole revoked on two separate occasions, indicating a pattern of not following terms and conditions of parole or release.

For these reasons and to protect the public from future crimes of the defendant, the court finds that defendant is a danger to the safety of others or the community, and hereby **DENIES** defendant's request for compassionate release pursuant to 18 U.S.C § 3582(c).

### C. 18 U.S.C. § 3553(a) Sentencing Factors

Additionally, the sentencing factors under 18 U.S.C. § 3553(a) also do not weigh in favor of reducing defendant's sentence. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Defendant's crimes were indisputably serious: as previously explained, he participated in a large-scale drug

trafficking organization, where he distributed approximately one kilogram of cocaine and intended to distribute smaller amounts of heroin. Moreover, defendant has also served less than 25% of his sentence. See, e.g., United States v. Colonna, 2020 WL 2839172, at *4 (S.D. Fla. June 1, 2020) (holding that a modification of defendant's sentence is unwarranted in part because defendant had served less than 25% of the sentence); United States v. Linder, 2020 WL 2793089, at *4 (W.D. Pa. May 29, 2020) (same); United States v. Singui, 2020 WL 2523114, at *5 (C.D. Cal. May 18, 2020) (same). Early release would not be consistent with the severity of defendant's offense and the interest in providing just punishment for that serious offense. Therefore, this court finds that granting defendant's motions for compassionate release would be inconsistent with the sentencing factors set forth in § 3553(a).

### D. Home Confinement

To the extent that defendant asks that this court order the BOP to place him on home confinement for the remainder of his sentence, (see ECF No. 35), the court hereby **DENIES** that request. This court has no authority to direct BOP to place a defendant in home confinement, and declines to advise that he be placed in home confinement. Rather, such designation decisions are committed solely to BOP's discretion. Once a sentence is imposed, BOP is solely responsible for determining an inmate's

place of incarceration.  See 18 U.S.C. § 3621(b); see also United States v. Patterson, 2019 WL 127962, at *2 (E.D. Va. Jan. 8, 2019) (holding that a district court may only issue a non-binding, strictly advisory recommendation regarding placement without running afoul of the limitations on modifying sentences set out in 18 U.S.C. § 3582 and Fed. R. Crim. P. 35).

### III. Conclusion

Because the court finds that defendant's early release would endanger the safety of the community and would be inconsistent with the sentencing goals set forth in 18 U.S.C. § 3553(a), the court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted.  Defendant's motion for compassionate release, (ECF No. 35), is hereby **DENIED**.

The Clerk is directed to send a copy of this Order to counsel of record, any unrepresented parties, the Warden at FCI Elkton in Lisbon, Ohio, and the Probation Office of this court.

It is SO ORDERED this 17th day of August, 2020.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge